181 P.2d 777
### THOMEY v. THOMEY.
### No. 7353.

Supreme Court of Idaho.

May 28, 1947.

Rehearing Denied June 30, 1947.

Rayborn & Rayborn and Harry Povey, all of Twin Falls, for respondent.

W. L. Dunn, of Twin Falls, for appellant.

MILLER, Justice.

September 30, 1946 trial of an action for divorce, wherein Emma Thomey was plaintiff (respondent here) and Henry Thomey was defendant (appellant here) came on for hearing in the District Court of Twin Falls County, Idaho, before the Honorable James W. Porter, District Judge. At the conclusion of respondent's case, appellant moved for a nonsuit, which motion was denied and appellant then rested without the

submission of any proof in opposition to respondent's case. Accordingly, there is no question as to the ultimate facts.

August 10, 1933, appellant was residing in a rented house in Twin Falls, Idaho. He was then a widower with three small children, the mother thereof being dead. Some weeks theretofore he had invited Emma Stepper, likewise a resident of Twin Falls, to come and live with him. Respondent told appellant that she was not divorced from Mr. Stepper, whereupon appellant stated to her that it did not matter, that she could get a divorce later, and that whatever property was accumulated would belong jointly to respondent and appellant in the event they subsequently separated.

At that time respondent was living at the Erikton Cabins with her two children. She had not lived with Mr. Stepper for some time. Soon after her talk with Thomey she went to visit her folks and upon her return to Twin Falls, she and her children went to live at the home of appellant. After entering the home of appellant, she performed all the duties that usually are performed by the ordinary housewife, such as cooking meals and serving the same, washing and ironing and mending clothes for appellant and his and her children, caring for them at such times as they were sick, and such other duties as are performed in the average home. During all the time, being some thirteen years that respondent and appellant lived together, they occupied the same bed. Respond-

ent and appellant maintained their home for approximately four years after they began living together at Twin Falls and during the latter part of that time appellant was working in a cafe at Buhl, Idaho, and on one occasion came to Twin Falls and told respondent, "You better get your divorce and then we can get married."

In November 1937, respondent obtained a divorce from Theodore Stepper, her former husband, and shortly thereafter the Thomey family moved to Buhl, where they resided for some nine years before the commencement of this action. No ceremonial marriage took place thereafter between respondent and appellant, but they continued to live together with their children as previously, in the same house, occupying the same bed, and with respondent continuing to take care of appellant and the other members of the family and to do the washing, mending, ironing, cooking, and housekeeping duties for all until she left appellant in July 1946.

Findings of fact, conclusions of law, and judgment, all in favor of respondent, were made and entered October 8, 1946. The complaint charges that the defendant has been guilty of cruel and inhuman treatment towards the plaintiff, and has inflicted both grievous mental and physical suffering upon said plaintiff thru his acts and conduct. The court found, among other things, that the defendant has been guilty of cruel and inhuman treatment towards the plaintiff and has inflicted both grievous.

396

mental and physical suffering upon plaintiff thru his acts and conduct, and as a conclusion of law, the court concluded that the plaintiff and defendant herein are now and at all times since November 26, 1937, have been wife and husband by virtue of a common-law marriage, and that said defendant, by reason of his acts and conduct, is estopped to deny the existence and validity of said marriage. The judgment, among other things, recites: "Now, therefore, it is ordered, adjudged and decreed That the bonds of matrimony heretofore existing between the plaintiff, Emma Thomey, and the defendant, Henry Thomey, be and the same are hereby dissolved and the parties hereto restored to the status of single persons."

Said judgment, continuing further, recites that the community property of the parties hereto, thereinafter set forth and described be divided between the plaintiff and defendant. Said judgment then proceeds to describe said property and to award it as nearly equal as possible between the parties to the action.

November 7, 1946 appellant filed and served his notice of appeal. The appeal is from the judgment and from the whole thereof.

The trial judge in a memorandum decision, filed and entered herein, succinctly outlined the issue involved, when he said: "Defendant has stood on his motion for nonsuit and has offered no testimony. His theory apparently is that where parties live together as husband and wife with guilty knowledge that one of the parties is not divorced, a common law marriage cannot arise after the impediment is removed unless there be a new contract or some change in their prior relationships, that a mere continuance of their relationship is not sufficient to give rise to a common law marriage."

The foregoing is the only question that needs consideration by this court in passing upon the merits of this appeal.

Appellant seems to rely chiefly on 38 C.J., under the title "Marriage," as support for his contention. As a part of the text covered by his citation (38 C.J., p. 1320) is the following: "Where parties to an agreement and relationship which, but for the existence of an impediment, would have constituted a valid marriage continue in the relationship in good faith, upon the removal of the impediment the law will establish between them a valid common-law marriage."

Under note 49 of the above text is cited the case of Clark v. Clark, 44 Nev. 44, 52, 189 P. 676, 678, 194 P. 96, very similar to the instant case, in which it is said: "We accept and reaffirm the general rule that, if parties desire marriage and do what they can to render their union matrimonial, but one of them is under a disability, their cohabitation thus matrimonially meant and continued after the disability is removed will, in law, make them husband and wife from the moment that such

disability no longer exists, although there are no special circumstances to indicate that the parties expressly renewed their consent or changed their mode of living after the removal of the impediment; and, even though the removal is unknown, continued cohabitation thereafter evidences consent to live in wedlock. 18 R.C.L. 436, where the cases in support of the doctrine are collated in the notes."

It is needless to further pursue the authorities cited by appellant, as this jurisdiction has adversely disposed of appellant's contention.

In the case of Huff v. Huff, 20 Idaho 450, 118 P. 1084, the rule is announced where an initial impediment existed, and after the citation of authorities, as follow: "So in the case at bar, even if the marriage of respondent and Martin V. Huff was void at the time of solemnization on the 14th day of March, 1880, because a former wife of Martin V. Huff from whom he had not secured a divorce was then alive, still a marriage will be presumed to have occurred after the removal of the legal impediment by the death of the former wife, Abigail J. Huff."

The case of Smith v. Smith, 32 Idaho 478, 185 P. 67, 69, is almost identical in point of facts, and this court announced the rule as follows: "The authorities all agree upon the following broadly stated rule: Where it is sought to invalidate a present existing marriage on the ground that one of the parties thereto was incapable of consummating a lawful marriage by reason of a former subsisting marriage, * * * in order to be sufficient to overcome this presumption, must be so cogent and conclusive as to fairly preclude any other result."

In the case of Mauldin v. Sunshine Mining Company, 61 Idaho 9, 97 P.2d 608, 611, this court announces the rule adopted in this state, as follows: "The rule adopted in this jurisdiction is that the law presumes morality, and not immorality; marriage, and not concubinage; legitimacy, and not bastardy, every intendment of the law leans to matrimony. When a marriage has been shown in evidence, whether regular or irregular, and whatever the form of proof, the law raises a strong presumption of its legality, casting the burden of proof upon the party objecting and requiring him in every particular, to make plain, against the constant pressure of this presumption the truth of law and fact that the marriage is illegal and void."

See, also, Nicholas v. Idaho Power Company, 63 Idaho 675, 125 P.2d 321, where various rules and presumptions in this jurisdiction are announced, and which are supported by numerous authorities.

And, in the case of Morrison v. Sunshine Mining Company, 64 Idaho 6, 127 P.2d 766, 769, where initial impediment has ceased, is the following: "Although the contract and consent marriage between Morrison and appellant, entered into July 10, 1937, was *absolutely void at the time,* the more

reasonable rule seems to be that a continuance of the marital relation and assumption of its duties, after the impediment ceased, (decree of divorce became final) and Morrison was capable of contracting marriage, amounted to a consensual marriage, under the statute, and could not be assailed or avoided."

The marital status of respondent and appellant, having continued for nine years after the impediment was removed by the divorce of respondent from Stepper, appellant cannot now be heard to say that his marriage with respondent was void.

The judgment of the trial court is affirmed. Costs to respondent.

BUDGE, C. J., and GIVENS, and HOLDEN, JJ., concur.